OPINION
{¶ 1} Defendant-appellant Melvin Lee Williams appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of having weapons while under disability and one count of possession of marijuana. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 31, 2004, the Stark County Grand Jury indicted appellant on one count each of having weapons while under disability in violation of R.C. 2923.13(A)(3) and possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(d), both felonies of the third degree. At his arraignment on September 24, 2004, appellant entered a plea of not guilty to the charges.
 {¶ 3} Thereafter, on October 19, 2004, appellant filed a Motion to Suppress/Dismiss arguing, in part that the arresting officer lacked a reasonable, articulable suspicion to justify a traffic stop of appellant. The following testimony was adduced at the suppression hearing on October 20, 2004.
 {¶ 4} Officer William Watkins of the Canton Police Department was on duty on July 27, 2004, and was finishing up a traffic speeding citation on Route 30 eastbound when a call came over the police radio that a black male in a grey Cadillac STS "was waving a gun and he was getting on the Cherry on-ramp to [Route] 30 westbound." Transcript at 6. As he was finishing the speeding ticket, the officer observed a car matching the above description containing a black male getting onto Route 30 westbound at a "pretty good" rate of speed. Transcript at 9. Officer Watkins then took off in his cruiser and was traveling at speeds in excess of 100 MPH in an attempt to catch up with the Cadillac.
 {¶ 5} At some point in time, the Cadillac got off the Raff Road exit with the cruiser, which had its lights and sirens activated, in pursuit. At the hearing, Officer Watkins testified that he believed that the driver of the Cadillac was trying to evade being stopped. The Cadillac then turned down a dead end street, turned into a driveway, and was getting ready to back out of the driveway when Officer Watkins angled his cruiser to block the Cadillac. The officer then arrested appellant, who was the driver of the Cadillac. According to Officer Watkins, appellant had a warrant out for his arrest.
 {¶ 6} When questioned, the officer testified that traffic was pretty light on Route 30 westbound at the time of the incident and that "[a]t that point in time, that was the only grey Cadillac that was going by me. . . ." Transcript at 18.
 {¶ 7} The next witness at the suppression hearing was Officer Lester Marino of the Canton Police Department. Officer Marino was on duty on July 27, 2004, when he received a dispatch at 1912 hours that a man with a gun was in a champagne colored Cadillac with 30 day license plates on it. The dispatch indicated that the Cadillac was "leaving the area of East Tusc and Gibbs; and they gave a last known direction on Route 30 from Cherry Avenue." Transcript at 22. After hearing that Officer Watkins had the Cadillac stopped, Officer Marino proceeded to the scene and observed a champagne colored Cadillac parked in a driveway near Officer Watkins' cruiser. According to Officer Marino, the Cadillac fit the description that he heard over the police radio.
 {¶ 8} On cross-examination, Officer Marino testified that the Cadillac was not grey. The officer further testified that a man identifying himself as "Richard Rountree" had called the 911 dispatcher about the man in a Cadillac waving a gun and that "Richard Rountree" left a telephone number with the dispatcher. However, when Officer Marino attempted to call such number, he discovered that it was a "bad number". Transcript at 24. In addition, "Richard Rountree" was never located. Officer Marino agreed that, to the best of his knowledge, both the name and telephone number were false.
 {¶ 9} At the conclusion of the hearing, the trial court denied the Motion to Suppress stating on the record, in relevant part, as follows:
 {¶ 10} "So they receive a call. Based on that call the dispatcher because it deals with a gun immediately gets that message out and it is related — I have heard the word grey, I have heard the word champagne, I have word [sic] the word purple used by the — that is on the tape — and that it is involving Route 30, that it is in fact a Cadillac, that there is a temporary tag. There is a black male and there is a gun.
 {¶ 11} "The issue becomes whether under the totality of the circumstances Officer Watkins had a reasonable suspicion of criminal activity upon which he could stop the vehicle.
 {¶ 12} "Now, what did he have? He had a description of a car based on an anonymous phone call. He had a description of the location. He had a very short interval of time.
 {¶ 13} "The test is totality of the circumstances, and the Court finds that based on the fact that there is a call relative to a Cadillac, whether it is grey, purple, champagne, with the direction of the vehicle, with there not being a bunch of Cadillacs or heavy traffic and the timing, clearly there is corroboration based on just the coincidence that he happens to be there and observes it just at the same time the call comes in.
 {¶ 14} "That in and of itself given the test of totality of the circumstances provided the reasonable suspicion for the officer to pursue and stop the vehicle to further investigate." Transcript at 28-29.
 {¶ 15} Thereafter, on October 27, 2004, appellant entered a plea of no contest to both charges. As memorialized in a Judgment Entry filed on November 2, 2004, the trial court sentenced appellant to an aggregate prison sentence of one year. In addition, the trial court ordered appellant to pay a $5,000.00 fine and suspended his driver's license for six months.
 {¶ 16} Appellant now raises the following assignment of error on appeal:
 {¶ 17} "THE TRIAL COURT ERRED BY DENYING THE DEFENDANT'S MOTION TO SUPPRESS."
 I {¶ 18} Appellant, in his sole assignment of error, argues that the trial court erred in denying his Motion to Suppress. Appellant specifically contends that his motion should have been granted since Officer Watkins, the arresting officer, lacked reasonable, articulable suspicion to justify a traffic stop of appellant. We disagree.
 {¶ 19} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning
(1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908,Guysinger, supra.
 {¶ 20} An investigatory stop is permissible if a law enforcement officer has a reasonable suspicion, based on specific and articulable facts, that the individual to be stopped may be involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868. When determining whether or not an investigative traffic stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be viewed in light of the totality of circumstances surrounding the stop. State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, cert. denied (1988), 488 U.S. 910, 109 S.Ct. 264.
 {¶ 21} The courts have recognized three categories of informants: (1) citizen informants; (2) known informants, i.e., those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable. Maumee v. Weisner,87 Ohio St.3d 295, 300, 1999-Ohio-68, 720 N.E.2d 507. "[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity" to justify an investigative stop. Alabama v. White (1990), 496 U.S. 325,329, 110 S.Ct. 2412. (citation omitted). "This is not to say that an anonymous caller could never provide the reasonable suspicion necessary for [an investigative] stop." Id. A stop is lawful if the facts relayed in the tip are "sufficiently corroborated to furnish reasonable suspicion that [the defendant] was engaged in criminal activity." Id. at 331.
 {¶ 22} Because the identity of "Richard Rountree" could never be confirmed by the police, the tipster in this matter, noted by both parties, was an anonymous informant. While appellant maintains that the informant's tip was unsupported by corroboration of criminal activity, we disagree. Rather, we concur with the trial court that the informant's anonymous tip was sufficiently corroborated to furnish reasonable suspicion that appellant was engaged in criminal activity. As is stated above, the tipster indicated that a back male in an STS Cadillac was waving a gun out of the window. The tipster further indicated that the Cadillac was getting on the Cherry on-ramp to Route 30 westbound. Shortly after such information was received from the tipster, Officer Watkins observed appellant's Cadillac in the area designated by the tipster. The Cadillac matched the description that the dispatcher had received and there were no other vehicles in the vicinity matching the description. In addition, appellant matched the description of the driver.
 {¶ 23} Furthermore, Officer Watkins testified that the Cadillac was driving fast and that he believed that the driver was attempting to elude him. Even though Officer Watkins had his sirens and lights activated, the Cadillac did not initially stop, forcing the officer to pursue the same. As noted by appellee, "[n]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." See United States v.Brignoni-Ponce (1975), 422 U.S. 873, 885, 95 S.Ct. 2574 (1975); Floridav. Rodriguez (1984), 469 U.S. 1, 6, 105 S.Ct. 308; Illinois v. Wardlow
(2000), 528 U.S. 119, 124, 120 S.Ct. 673.
 {¶ 24} Based on the foregoing, we find that, under the totality of the circumstances, Officer Watkins had reasonable, articulable suspicion to justify a traffic stop of appellant.
 {¶ 25} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 26} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J., Farmer, P.J., and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.