[Cite as *State v. Borum*, 2014-Ohio-5639.]

STATE OF OHIO            )                 IN THE COURT OF APPEALS
                              )ss:             NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

| | |
|---|---|
| STATE OF OHIO | C.A. No. 27167 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DARYL K. BORUM | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 13 07 1832 |

DECISION AND JOURNAL ENTRY

Dated: December 23, 2014

CARR, Judge.

{¶1} Appellant, Daryl Borum, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} On July 6, 2013, Akron police stopped Borum's vehicle after receiving a report that he had flashed a gun at a neighbor. The Summit County Grand Jury subsequently indicted Borum on one count of carrying a concealed weapon, one count of trafficking in marijuana with a criminal forfeiture specification, and one count of possession of marijuana. Borum pleaded not guilty to the charges at arraignment. On August 12, 2013, Borum filed a motion to suppress all of the evidence obtained during the search of his vehicle. After a suppression hearing, the trial court issued an order denying the motion. Borum subsequently entered a plea of no contest to the charges in the indictment. The trial court found Borum guilty of the charges, and sentenced

him to a twelve-month term of incarceration which was suspended on the condition that he successfully complete a two-year period of community control.

{¶3}   Borum filed a timely notice of appeal, and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶4}   In his sole assignment of error, Borum argues that the trial court erred in denying his motion to suppress.  Borum asserts that the police had no basis to stop his vehicle, that the police did not have the reasonable suspicion required to conduct a pat down for weapons, and that the police lacked authority to search his vehicle.  This Court disagrees.

{¶5}   A motion to suppress evidence presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id*., citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Burnside* at ¶ 8.  "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶6}   Turning to the evidence presented at the suppression hearing, Officer Tanisha Stewart was on patrol on July 6, 2013, near Highland Square in Akron, when she received a call from dispatch.  According to the report, a man driving a black Mercury with a stripe on the side had flashed a gun at the caller.  The caller was identified as "Chris," and the call came from 927

West Exchange Street. The caller also stated that the man who had flashed the gun was named "Daryl," and that he lived several houses down the street. Officer Stewart was in the area when the alleged incident occurred, and she testified that she spotted a vehicle that fit the description almost immediately after receiving the call. As the black Mercury sat waiting to turn eastbound onto West Exchange Street, Officer Stewart waived for the vehicle to turn in front of her. After the vehicle pulled in front of the cruiser, Officer Stewart activated her lights and sirens to initiate a traffic stop. Instead of pulling over, the driver ignored the signal and continued down West Exchange for 30 seconds to a minute before pulling into the residence located at 945 West Exchange Street. Officer Stewart alerted the other officers in the area that the subject had failed to comply with the signal. The Mercury proceeded to drive to the end of the driveway which wrapped around to the back of the residence. Officer Stewart pulled in the driveway behind the vehicle.

{¶7}    After the vehicle came to a stop, Borum immediately jumped out of the driver's seat and started questioning Officer Stewart's basis for pulling him over, insisting he "didn't do anything." Officer Stewart stood behind her cruiser door for safety reasons and asked Borum to approach the cruiser. Officer Stewart emphasized during her testimony that the sequence after Borum pulled into the driveway "happened really fast." As other officers began to arrive at the scene, Officer Stewart conducted a brief pat down in light of the allegation that Borum had a gun. Officer Stewart then asked Officer Soroky, who was a male, to conduct a more thorough pat down of the male subject. With the knowledge that the man driving the Mercury was, in fact, named "Daryl," Officer Stewart dialed the phone number of the caller who had made the report. While Officer Soroky was with Borum and Officer Stewart was on the phone, Officer Means arrived on the scene. Officer Stewart asked Officer Means to check the vehicle for weapons that

may have been in the immediate area of where Borum was seated. With respect to the phone call, an individual named "Christine" answered the phone. "Christine" told Officer Stewart that she had previously let someone else use her phone and that she did not know anything about a driver flashing a gun. Borum was standing unrestrained 10 to 15 feet from the cruiser as these events unfolded. While Officer Stewart continued to converse on the phone, Officer Means observed a green gym bag on the front passenger seat. Officer Means attempted to pick up the bag but found it to be abnormally heavy. When Officer Means removed the bag from the vehicle and opened it, he discovered that it contained guns, ammunition, and money. At that point, Borum was placed under arrest.

{¶8} In support of his assignment of error, Borum first challenges the propriety of the stop of his vehicle. "Searches and seizures without a warrant are 'per se unreasonable' except in a few well-defined and carefully circumscribed instances." *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 98. The investigative stop exception to the Fourth Amendment warrant requirement permits a police officer to stop an individual, provided the officer has the requisite reasonable suspicion, based upon specific and articulable facts, that a crime has occurred or is imminent. *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999), citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968). This inquiry involves a consideration of the totality of the circumstances where "'both the content of information possessed by police and its degree of reliability' are relevant to the court's determination." *Weisner* at 299, quoting *Alabama v. White*, 496 U.S. 325, 330 (1990). "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." *State v. Andrews*, 57 Ohio St.3d 86, 88 (1991). Under circumstances such as the case at bar where "information possessed by the police before the stop stems solely from an informant's tip, the

determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip." *Weisner* at 299. "A telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability." *Weisner* at paragraph two of the syllabus. Unlike anonymous informants, citizen informants, who face the prospect of criminal liability for fabricating a report, are accorded a presumption of reliability. *Weisner* at 300-301 ("an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary[.]"). Moreover, with respect to the substance of the tip, an eyewitness account of criminal activity is due greater reliability than a secondhand description. *Weisner* at 302, citing *Illinois v. Gates*, 462 U.S. 213, 233-234 (1983). The immediacy of the report lends further credibility to the tip, as the informant's account is not completely dependent on memory. *Id.*

{**¶9**} Borum asserts that the facts of this case are similar to those in *State v. Ramsey,* 10th Dist. Franklin Nos. 89AP-1298, 89AP-1299, 1990 WL 135867 (Sept. 20, 1990), and thus, like the stop in *Ramsey,* this stop was not based on reasonable, articulable suspicion. However, the facts in *Ramsey* are easily distinguishable from the facts of the instant matter. The caller in *Ramsey* provided no indication of the basis of the caller's prediction that the defendant was intoxicated. *Id.* at *3. The caller in *Ramsey* merely "stated in a rather conclusory manner that the suspect was engaged in criminal activity." *Id.* The *Ramsey* court repeatedly emphasized how little detail was in the record before it about the tip. *Id.*

{**¶10**} In this case, given the record before us, we agree the trial court properly denied the motion to suppress. The initial report involved a man who had flashed a gun at a neighbor while driving a black Mercury bearing a stripe on its side. Dispatch was able to identify the first name, address, and telephone number of the citizen informant who made the report.

Furthermore, the citizen informant witnessed the alleged criminal conduct firsthand and immediately reported it to law enforcement, lending further credibility to the tip. The informant further identified the suspect by his first name, reported the color and make of car, and indicated that the suspect lived only a few doors away from the address where the incident had taken place. *See Weisner* at 302. Almost immediately after receiving the dispatch, Officer Stewart spotted a man in the proximate area of the alleged incident driving a car that matched the description. Given the nature of the tip, the identifying information about the informant, and the immediacy with which the alleged incident was reported, Officer Stewart was justified in initiating an investigatory stop. *See Weisner*, *supra*.

{¶11} Borum also challenges the propriety of the protective search of the vehicle and the initial pat down of his person. When police have lawfully stopped a vehicle, the officer may initiate a protective search of the vehicle for safety reasons when, under the totality of the circumstances, the officer has a reasonable suspicion that the individual is armed. *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph two of the syllabus. When applying this objective standard, courts review the totality of the circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Wade*, 9th Dist. Summit No. 26275, 2012-Ohio-4255, ¶ 10, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). "So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." *Bobo* at 180, quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972), citing *Terry*, 392 U.S. at 24, 30; *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) ("search of the passenger compartment of the automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on

'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons").

{¶12} In expanding the *Terry* holding to protective searches of vehicles in *Long*, *supra*, the United States Supreme Court specifically emphasized that the fundamental inquiry is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Long* at 1050, citing *Terry*, 392 U.S. at 27. In cases involving a subject who has exited his vehicle but has not been placed under arrest, this Court has underscored that the central inquiry regarding whether a protective search of the vehicle is reasonable focuses on whether the subject will be permitted to return to his vehicle where he could regain immediate control of the weapon. *Wade* at ¶ 20.

{¶13} As noted above, given the totality of the circumstances, there was reasonable articulable suspicion warranting the initial stop of the vehicle. Moreover, the ensuing pat-down of Borum's person fell within the stop-and-frisk doctrine of *Terry* and its progeny. As Officer Stewart attempted to initiate the stop, Borum refused to comply with the request and instead proceeded down the road for approximately a minute before pulling into a driveway and driving to the back of a house. When Borum subsequently sprang from the vehicle and questioned Officer Stewart's authority to initiate the stop, it was reasonable and prudent to conduct a safety frisk to ensure that Borum was not carrying a firearm on his person. *See Terry*, 392 U.S. at 24, 30 ("we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest").

{¶14} Law enforcement was further justified in conducting a protective search of Borum's vehicle in the area that he had abruptly vacated. The testimony at the suppression hearing revealed that the events unfolded rapidly after Borum bounded out of his vehicle, with the pat-down of Borum by Officer Soroky, the telephone call to the informant by Officer Stewart, and the limited search of the vehicle by Officer Means occurring almost instantaneously. Thus, at the point in time that the protective search of the vehicle was underway, police did not yet know that the citizen caller who was presumed to be the person associated with the phone number relayed to dispatch, was instead an unidentified individual who asked to use the phone. We must view these events "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Wade* at ¶ 10, quoting *Andrews*, 57 Ohio St.3d at 87-88. The officers in this case had an objectively reasonable belief that Borum was potentially dangerous given that the report centered on an alleged incident with a firearm, coupled with the fact that Borum began to behave unpredictably when Officer Stewart attempted to initiate the traffic stop. *Long*, 463 U.S. at 1050-1051. Moreover, Borum had not been placed under arrest at the time these events were unfolding, was not hand-cuffed or otherwise restrained, and was in close proximity to the vehicle, leaving him free to suddenly access the vehicle. There also was evidence in the record that a reasonable officer under the circumstances would have concerns about the risk of flight. Thus, in addition to conducting a pat-down of Borum's person, it was reasonable to conduct a limited search of the vehicle restricted to those areas in which a weapon may have be placed or hidden prior to his sudden exit. *Long*, 463 U.S. at 1049. It follows that the trial court did not err in denying the motion to suppress.

{¶15} Borum's assignment of error is overruled.

III.

**{¶16}** Borum's assignment of error is overruled.  The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

THOMAS DICAUDO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.