[Cite as *State v. Robison*, 2020-Ohio-2980.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA )

| | |
|---|---|
| STATE OF OHIO | C.A. No. 18CA0064-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MATTHEW ROBISON | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 18CR0234 |

DECISION AND JOURNAL ENTRY

Dated: May 18, 2020

HENSAL, Judge.

{¶1} Matthew Robison appeals from the judgment of the Medina County Court of Common Pleas, denying his motion to suppress. This Court affirms.

I.

{¶2} A grand jury indicted Mr. Robison on one count of aggravated trafficking in methamphetamine, and one count of aggravated possession of methamphetamine. The charges stemmed from a search of a vehicle driven by Jennifer Alexander, in which he was a passenger. In Ms. Alexander's appeal, this Court set forth the relevant factual background as follows:

> At approximately 1:30 a.m., Officer James Allenby responded to a nearby gas station based on a tip that two males appeared to be either under the influence of narcotics or involved in drug activity. The informant indicated that the two males were leaving the gas station in a blue Dodge four-door vehicle, and Officer Allenby spotted a matching vehicle as he approached the parking lot. Because the vehicle was leaving the lot, Officer Allenby followed behind it and executed a traffic stop shortly thereafter.
>
> The vehicle contained three occupants: (1) Alexander, who was the driver, (2) her boyfriend [Mr. Robison], who was the front seat passenger; and (3) an

acquaintance, who was the backseat passenger. Officer Allenby spoke with each occupant in turn and continued to investigate, as he found their circumstances suspicious and it was clear to him that the backseat passenger was under the influence of narcotics. Approximately 38 minutes into the traffic stop, he and another officer spotted an item of concern in the back of Alexander's vehicle and asked her for consent to retrieve the item and open it. Alexander assented, so they removed the item and identified it as a scale coated with drug residue. After locating that item, they searched the remainder of the vehicle and discovered narcotics. A second search of the vehicle, conducted several days later, also revealed narcotics that had been concealed inside a pillow in the trunk.

*State v. Alexander*, 9th Dist. Medina No. 18CA0066-M, 2019-Ohio-3310, ¶ 2-3. The police arrested Ms. Alexander and the backseat passenger at the scene, but did not arrest Mr. Robison. A few days later, after the second search of the vehicle, the police arrested Mr. Robison.

{¶3} Mr. Robison and Ms. Alexander filed motions to suppress in their respective criminal cases. Upon motion of Mr. Robison, the trial court held a consolidated suppression hearing. The trial court subsequently denied both motions, and Mr. Robison pleaded no contest to the indicted charges. The trial court found him guilty and sentenced him to three years of imprisonment. He now appeals, raising two assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT[']S MOTION TO SUPPRESS[.]

ASSIGNMENT OF ERROR II

THE TRIAL COURT'S DENIAL OF APPELLANT[']S MOTION TO SUPPRESS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE OR BASED UPON INSUFFICIENT EVIDENCE.

{¶4} Mr. Robison has set forth two assignments of error that challenge the trial court's denial of his motion to suppress, but has not argued each assignment of error separately in his merit brief. While this Court can disregard his assignments of error on that basis, we exercise our

discretion to consider the merits of Mr. Robison's combined assignments of error. *See* Loc.R. 7(B)(7) of the Ninth District Court of Appeals ("Each assignment of error shall be separately discussed * * *."); App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to * * * argue the assignment separately in the brief[.]").

{¶5}     In his assignments of error, Mr. Robison argues that the trial court erred by denying his motion to suppress. Specifically, he argues that the officers violated his constitutional rights because they lacked reasonable suspicion to stop Ms. Alexander's vehicle, and because they lacked reasonable suspicion to prolong the length of the stop to investigate potential drug activity. He argues that the officers had no reliable information that he – or any of the other occupants of the vehicle – possessed drugs, or had used them. He also argues that, even if the officers did have reasonable suspicion to prolong the stop, the continued detention became illegal when Ms. Alexander refused to consent to a search of the vehicle. Mr. Robison further argues that any evidence obtained as a result of the illegal search was fruit of the poisonous tree, and that the inevitable-discovery exception does not apply. Lastly, in a footnote, he argues that the officers conducted an illegal pat down of him. For the reasons that follow, this Court disagrees.

{¶6}     A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial

court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124

Ohio App.3d 706, 710 (4th Dist.1997). [1]

{¶7}    This Court set forth the trial court's findings of fact and conclusions of law in Ms.

Alexander's appeal, which are identical to the findings of fact and conclusions of law the trial court

made in this case,[2] as follows:

> The trial court found that, at about 1:30 a.m., Officer James Allenby received a dispatch regarding suspicious individuals at a nearby gas station. The dispatcher received his or her information from the gas station clerk, who reported that the suspicious individuals had been "involved in drug activity" in the restroom and were leaving in a blue four door vehicle. The court found that Officer Allenby knew the gas station clerk who had called, dealt with her on a daily basis, and felt that she was a reliable source given that the employees of the 24-hour gas station were "used to people doing drugs in their bathroom." Only after he completed the stop did Officer Allenby learn that the clerk had not personally observed the suspicious activity she relayed to the dispatcher. Instead, a customer had reported the suspicious activity to her, and she, in turn, had reported it to the dispatcher.
>
> The trial court found that, as Officer Allenby approached the gas station in his cruiser, he saw a blue four door vehicle. Noting that it matched the vehicle description he had received from dispatch and that it had a burned-out license plate light, Officer Allenby stopped the vehicle to investigate. Upon his approach, he discovered that the vehicle had three occupants. Alexander was the driver, her boyfriend was the front seat passenger, and an acquaintance of theirs was the backseat passenger. Officer Allenby began his investigation by collecting their information and identifying each person. As he was doing so, he noticed the backseat passenger had "heavy or droopy eyelids" indicative of drug use. The court found that Officer Allenby had undergone Drug Recognition Training and was "able to recognize the physical signs of when a person is under the influence of seven different types of drugs including amphetamines." Consequently, the court found him to be a Drug Recognition Expert, qualified to determine that the backseat passenger was under the influence of narcotics.

---

[1] The caption of Mr. Robison's second assignment of error challenges the trial court's decision as not being supported by sufficient evidence, and as being against the manifest weight of the evidence. This Court reviews a trial court's denial of a motion to suppress based upon the standard set forth herein, which "presupposes evidentiary weighing by an appellate court[.]" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 15.

[2] The trial court substituted "Robison" for "Alexander" where appropriate.

The trial court found that Officer Allenby spoke with each of the vehicle's three occupants in turn, separating them one at a time by making use of his cruiser and the cruiser of a second officer who had arrived to assist. While speaking with Alexander, Officer Allenby learned that she and her boyfriend were from an area near Sandusky. Alexander told the officer that she and her boyfriend had driven to Akron to pick up the backseat passenger because he was drunk and had called for a ride. Officer Allenby found it strange that Alexander and her boyfriend would drive that far in the middle of the night just to give the backseat passenger a ride. He then informed Alexander that someone at the gas station had seen two men engaged in suspicious activity in the bathroom, and she confirmed that her boyfriend and the backseat passenger had gone into the bathroom. Following his initial conversation with Alexander, Officer Allenby spoke with the backseat passenger.

The trial court found that, as Officer Allenby spoke with the backseat passenger, he confirmed his initial suspicion that the man was under the influence of narcotics. The officer observed that the backseat passenger's pupils were constricted in spite of the dark surroundings, his speech was slurred, and his eyelids continued to be droopy. The backseat passenger admitted that he had been in the gas station bathroom and had used drugs in the past, but denied any recent use. As Officer Allenby continued to speak with him, however, he began crying and admitted that he had used heroin earlier that day. The backseat passenger acknowledged that Alexander and her boyfriend had picked him up in Akron, but did not say how he knew them.

The trial court found that, after speaking with the backseat passenger, Officer Allenby spoke with the boyfriend. Much like Alexander, the boyfriend initially maintained that the backseat passenger was drunk. After Officer Allenby informed him that the backseat passenger was actually under the influence of heroin, however, the boyfriend then offered that he had only known the backseat passenger for a few days. That statement also aroused Officer Allenby's suspicions given the considerable distance that Alexander and her boyfriend had driven in the middle of the night to pick up the backseat passenger. Moreover, while speaking with the boyfriend, the officers noticed track marks on his neck. When Officer Allenby asked about the track marks, the boyfriend admitted that he sometimes injected drugs, but claimed he had not done so for several days. He indicated that he took prescription Percocet each day for pain and would use heroin when his pills ran out.

The trial court found that, following his conversations with each of the three occupants, Officer Allenby and his fellow officer walked around Alexander's vehicle and looked through the windows. They noticed a black object in the backseat, and the second officer relayed that she had seen Alexander's boyfriend attempt to throw a blanket over the object while still inside the car. Officer Allenby asked Alexander about the object, but she claimed not to know what it was. He then asked her for permission to remove the object and open it, and she agreed he could

do so. Upon opening the object, Officer Allenby discovered it was a scale coated with crystals that resembled methamphetamine residue.

The trial court concluded that Officer Allenby possessed reasonable suspicion to stop Alexander's vehicle based on the information he received from dispatch. It found that the tip the dispatcher received from the gas station clerk and relayed to Officer Allenby possessed sufficient indicia of reliability because the officer was very familiar with the clerk and knew her to be a reliable source. Though it was actually a customer who had observed the suspicious activity and not the clerk herself, the court noted that Officer Allenby was unaware of that fact until later. Based on the information available to him at the time of the stop, the court concluded that Officer Allenby had reasonable suspicion to conduct an investigatory stop to determine whether Alexander or her passengers "were in possession of illegal drugs and paraphernalia to use or sell * * *."

The trial court also concluded that, once Officer Allenby began his investigation, he continued to develop "more 'specific and articulable facts' [to] support[ ] his initial suspicions that the occupants were involved in drug activity." Those facts included the backseat passenger's appearance and behavior, Alexander and her boyfriend's claim that the backseat passenger was only intoxicated, their further claim that they had driven a considerable distance to pick up someone they barely knew at such a late hour, the track marks on the boyfriend's neck, and the backseat passenger and boyfriend's admissions that they were heroin users. The court found that Officer Allenby was justified in continuing to detain Alexander until he spotted the black case in her car and, as a result of opening it, developed probable cause to search the remainder of her car.

*Alexander* at ¶ 10-17.

{¶8} Like Ms. Alexander, Mr. Robison's arguments on appeal sound entirely in law; he has not challenged the trial court's factual findings. *Id.* at ¶ 19. In her appeal, Ms. Alexander argued that Officer Allenby lacked reasonable suspicion to stop her vehicle because "the State failed to prove that the tip the officer received from dispatch possessed sufficient indicia of reliability[,]" and that he lacked reasonable suspicion to prolong the length of the stop to investigate potential drug activity. *Id.* at ¶ 18, 21. This Court rejected those arguments. *Id.* at ¶ 20, 22. In doing so, this Court stated that "we cannot conclude that the trial court erred when it determined that the tip Officer Allenby received from dispatch provided him with reasonable suspicion to stop Alexander's car and investigate its occupants for possible drug activity[,]" and

that "the record contains competent, credible evidence in support of the trial court's determination that Officer Allenby legally detained Alexander for the duration of the traffic stop." *Id.* at ¶ 20, 22. Regarding the latter, this Court indicated that:

> [a]pproximately 38 minutes elapsed between the point in time that Officer Allenby executed the stop and the point in time that he discovered the residue-coated scale inside the vehicle. During that period of time, Officer Allenby was actively confirming the identities of the three occupants, speaking separately with each occupant, conferring with the second officer on scene, inspecting Alexander's vehicle, and performing other tasks in the pursuit of his investigation. The record does not support the conclusion that he purposely delayed matters or otherwise failed to diligently conduct his investigation. * * *.
>
> The trial court determined that, as the stop progressed, Officer Allenby continued to develop "more 'specific and articulable facts' [to] support[ ] his initial suspicions that the occupants were involved in drug activity." The record supports that determination given the backseat passenger's appearance and behavior, Alexander and her boyfriend's claim that he was only intoxicated, their further claim that they had driven a considerable distance to pick up someone they barely knew at such a late hour, the track marks on the boyfriend's neck, and the backseat passenger and boyfriend's admissions that they were heroin users. Based upon the totality of the circumstances, Officer Allenby possessed reasonable suspicion to extend Alexander's detention as he continued to investigate the suspicious activity that he observed.

*Id.* at ¶ 22-23. Nothing in Mr. Robison's merit brief, which presents substantially similar arguments relative to the legality of the stop, the occupants' continued detention, and the search of the vehicle, compels this Court to reach a different conclusion than our decision in *Alexander*. We, therefore, reject Mr. Robison's arguments. Based upon this conclusion, we likewise reject Mr. Robison's arguments that any evidence obtained as a result of the illegal search was fruit of the poisonous tree, and that the inevitable-discovery exception does not apply, both of which presuppose that an illegal search and seizure occurred. To the extent that Mr. Robison has challenged the pat-down search, he has not argued – and there is no indication in the record – that he suffered any prejudice, even assuming without deciding that the pat down was illegal. *See State*

*v. Franchi*, 9th Dist. Summit No. 22474, 2005-Ohio-5105, ¶ 7. Accordingly, Mr. Robison's assignments of error are overruled.

### III.

**{¶9}** Mr. Robison's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, P. J.
CARR, J.
CONCUR.

APPEARANCES:

RUSSELL A. BUZZELLI, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.