OPINION
{¶ 1} Appellant Chad Long appeals from the trial court's denial of his motion to suppress. Plaintiff-appellee is the State of Ohio.
 {¶ 2} This case arose when the Louisville Police found appellant in possession of a 10-inch pocket knife, concealed in his right front pants pocket. Appellant was charged with the one count of delinquency by means of carrying a concealed weapon, a misdemeanor of the first degree pursuant to R.C. 2923.12.
 {¶ 3} Appellant filed a motion to suppress all of the evidence against him, arguing that the police had no probable cause or reasonable suspicion to approach him and search his person. A suppression hearing was held and the motion was overruled.
 {¶ 4} Appellant then entered a plea of no-contest and stipulated to a finding of true. The trial court found appellant delinquent by means of carrying a concealed weapon. The trial court sentenced appellant for a period of 30 days detention which was suspended on condition of successful completion of probation and payment of court costs. The trial court also ordered destruction of the weapon. The facts giving rise to this appeal are as follows:
 {¶ 5} Patrolman James Little was on routine patrol in Louisville, Ohio, on July 11, 2004. Patrolman Little pulled into the McDonald's restaurant on South Chapel in Louisville around 10:00 p.m. to get a cup of coffee. While Patrolman Little was still in the drive-thru lane, dispatch advised that someone had called about a person with a gun at McDonald's. The caller reported a person with a gun standing with a group of people on the south side of the restaurant near the newspaper box.
 {¶ 6} Patrolman Little spotted a group of people, all juveniles, on the south side of McDonald's near the newspaper box as dispatch indicated. Remaining in his cruiser, Patrolman Little positioned himself where could observe the group until backup arrived. He did not observe any criminal or suspicious activity by anyone in the group.
 {¶ 7} Several additional backup units arrived on the scene. Patrolman Little and the other officers approached the group of juveniles with weapons drawn because there was a concern for public and officer's safety based upon the nature of the call. Additionally, the St. Louis community festival was taking place directly across the street from McDonald's. The police instructed everyone in the group to put their hands up and sit down on the ground. Everyone in the group, including appellant, cooperated with the instructions. The officers then proceeded to pat the juveniles down.
 {¶ 8} Patrolman Little patted down appellant first because appellant was the closest person to him. He told appellant to stand and place his hands against the wall of the building with his feet apart. Appellant complied with this request. Patrolman Little patted down the exterior of appellant's clothing and during that pat-down, discovered what felt like a folding pocket knife in the right front pants pocket of appellant's pants. Patrolman Little reached into the pocket and removed the object which was in fact a folding pocket knife with a ten inch blade.
 {¶ 9} Appellant was arrested for carrying a concealed weapon, handcuffed, and placed in the police cruiser. Patrolman Little then assisted in patting down the rest of the juvenile in the group. No other weapons were discovered.
 {¶ 10} During the suppression hearing, Patrolman Little was cross-examined about the telephone call reporting the person with the gun. Patrolman Little stated he was not provided with any type of physical description, description of clothing, age or any other identifying characteristics for the suspect. Patrolman Little believed the call referred to a male suspect. Patrolman Little stated that while he did not know the name of the person who placed the call, police dispatch would have caller's information on the complaint card. Patrolman Little was the only witness called at the suppression hearing.
 {¶ 11} Appellant filed a notice of appeal setting forth the following assignment:
 {¶ 12} "I. The trial court abused its discretion when denyiing appellant's motion to suppress."
 I. {¶ 2} In his sole assignment of error, Appellant argues that the trial court erred in overruling his motion to suppress. We disagree.
 {¶ 3} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App. 3d 93,96; State v. Claytor (1993), 85 Ohio App. 3d 623, 627; State v.Guysinger (1993), 86 Ohio App. 3d 592.
 {¶ 4} In the instant appeal, appellant's challenge of the trial court's ruling on his motion to suppress is based on the third method. Accordingly, this court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in this case.
 {¶ 5} An investigative stop does not violate theFourth Amendment to the United States Constitution if the police have reasonable suspicion that "the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez
(1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621. Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Alabama v.White (1990), 496 U.S. 325, 330, 110 S.Ct. 2412,110 L.Ed.2d 301. But it requires something more than an "inchoate and unparticularized suspicion or `hunch.'" Terry v. Ohio (1968),392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889. "[T]heFourth Amendment requires at least a minimal level of objective justification for making the stop." Illinois v. Wardlow (2000),528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570.
 {¶ 6} A police officer need not always have knowledge of the specific facts justifying a stop and may rely upon a dispatch.Maumee v. Weisner (1999), 87 Ohio St.3d 295, 297,720 N.E.2d 507. This principle is rooted in the notion that effective law enforcement cannot be conducted unless officers can act on information transmitted by one officer to another, and that officers, who must often act quickly, cannot be expected to cross-examine their fellow officers about the foundation of the transmitted information. Id. The admissibility of evidence uncovered during a stop does not rest upon whether the officers relying upon a dispatch were themselves aware of the specific facts that led the colleagues to seek their assistance, but turns instead upon whether the officer who issued the dispatch possessed a reasonable suspicion to make a stop. Id., citingUnited States v. Hensley (1985), 469 U.S. 221, 231,105 S.Ct. 675, 83 L.Ed.2d 604. Thus, if the dispatch has been issued in the absence of a reasonable suspicion, then a stop in objective reliance upon it violates the Fourth Amendment. Id. The state must therefore demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity. Id. 87 Ohio St.3d at 298, 720 N.E.2d 507. See, also Village of Newcomerstown v. Ungrean,146 Ohio App.3d 409, 2001-Ohio-1754, 766 N.E.2d 233.
 {¶ 7} Where the information possessed by the police before the stop was solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight to be given the tip and the reliability of the tip. Id.
at 299, 720 N.E.2d 507. Courts have generally identified three classes of informants: the anonymous informant, the known informant from the criminal world who has provided previous reliable tips, and the identified citizen informant. Id. at 300, 720 N.E.2d 507. An identified citizen informant may be highly reliable, and therefore a strong showing as to other indicia of reliability may be unnecessary. Id. Thus, courts have routinely credited the identified citizen informant with greater reliability. Id.
 {¶ 8} Given the greater degree of reliability typically accorded the identified informant, the issue in this case thus becomes whether the informant should be considered identified or anonymous. Courts have been lenient in their assessment of the type and amount of information needed to identify a particular informant. Id. at 301, 720 N.E.2d 507.
 {¶ 9} In the case at bar, the officer did not believe that the information came into dispatch via an anonymous informant. (T. at 20). The police reports contained in the trial court's file clearly identify three (3) individuals, two of which claimed to have been threatened by a person with a handgun. The information provided to the police was sufficient to remove this case from the category of an anonymous tip and identify the reporter as a citizen informant.
 {¶ 10} As we noted in Village of Newcomerstown v. Ungrean,
supra we must next determine from the totality of the circumstances whether the tip is reliable, weighing in favor of the informant's reliability and veracity. Typically, a personal observation by an informant is due greater reliability than a second-hand description. 146 Ohio App.3d at 412, 2001-Ohio-1754,766 N.E.2d at 236. In the instant case, the police reports indicate that the informant had personally observed an individual with a gun. The knowledge of the circumstances was all first-hand, and the tip was therefore due significant weight.
 {¶ 11} The only remaining issue is whether the tip itself was sufficient to justify a reasonable suspicion of criminal activity, allowing the officer to stop the juveniles in reliance on the dispatch.
 {¶ 12} In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921,32 L.Ed.2d 612 (1972), a police officer, who was sitting in his patrol car, was approached by an informant whom he knew, and the informant told the officer that the defendant, who was seated in a nearby car, had a gun in the waistband of his pants and was carrying drugs. Id. at 144-145, 92 S.Ct. at 1922. The officer approached the defendant's car and asked the defendant to open the door. Id. at 145, 92 S.Ct. at 1922-1923. When the defendant rolled down the window of the car instead of opening the car door, the officer reached through the open window and removed a gun from the defendant's waistband. Id. at 145, 92 S.Ct. at 1923. In habeas corpus proceedings, the defendant claimed that all of the evidence seized from him should have been suppressed because "absent a more reliable informant, or some corroboration of the tip, the policeman's actions were unreasonable under the standards set forth in Terry." Id. at 145, 92 S.Ct. at 1923.
 {¶ 13} In holding that the police officer's actions were reasonable under the Fourth Amendment, Justice Rehnquist provided the following discussion of the holding in Terry: "In Terry
this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. TheFourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.
 {¶ 14} "* * *
 {¶ 15} "Applying these principles to the present case, we believe that [the officer] acted justifiably in responding to his informant's tip. The informant was known to him personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene. Indeed, under Connecticut law, the informant might have been subject to immediate arrest for making a false complaint had [the officer's] investigation proved the tip incorrect. Thus, while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, the information carried enough indicia of reliability to justify the officer's forcible stop of Williams.
 {¶ 16} "In reaching this conclusion, we reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person. Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations — for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime — the subtleties of the hearsay rule should not thwart an appropriate police response." Id. at 145-147, 92 S.Ct. at 1923-1924.
 {¶ 17} As applied to the facts of this case, theFourth Amendment requires that officer have had a "reasonable fear for his own or others' safety" before frisking appellant. Terry v.Ohio (1968), 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889.
 {¶ 18} Specifically, "[t]he officer . . . must be able to articulate something more than an `inchoate and unparticularized suspicion or hunch.' "United States v. Sokolow, 490 U.S. 1, 7,109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting Terry,392 U.S. at 27, 88 S.Ct. 1868). Whether that standard is met must be determined "`from the standpoint of an objectively reasonable police officer,' " without reference to "the actual motivations of the individual officers involved." United States v. Hill,131 F.3d 1056, 1059 (D.C. Cir. 1997) (quoting Ornelas v.United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911
(1996)).
 {¶ 19} In the case at bar, the officer received a dispatch concerning a man with a gun in the parking lot of McDonalds. The individual was with a group of individuals standing on the south side of the restaurant near the newspaper boxes. (T. at 5). The officer, who was already in the parking lot of the restaurant at the time he received the dispatch, observed eight to ten individuals at the entrance of the restaurant. (Id. at 7). The restaurant was located directly across the street from where a school festival was taking place. (Id. at 12). Many families were present at the event. (Id.). The officer called for back up because a gun was reported in the dispatch. (Id. at 6).
 {¶ 20} In the case at bar, the officer corroborated that a group of individuals was located in the spot of the McDonald's parking lot identified by the informant. We are cognizant of the fact that the informant provided no description of the individual and the officer himself did not observe any unusual activity. However, the stop occurred in a public place, the officers were confronted with a large group of individuals, and the location was in direct proximity to a school festival. The officers took control of the situation to prevent harm to them and the general public while they further investigated. The group was told of the reason for the stop. (T. at 8). To ask more of the police in these circumstances — to require them to investigate still further or to watch from a distance — might well preclude them from interceding before the suspect has accomplished his violent, perhaps lethal, purpose. The requirement of reasonable suspicion does not necessitate such forbearance.
 {¶ 21} The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure."Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382,115 L.Ed.2d 389 (1991); see also INS v. Delgado, 466 U.S. 210, 212,104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." Bostick, supra, at 434-435, 111 S.Ct. 2382
(citations omitted). Additionally, in inherently dangerous situations the risk of harm to both the police and the public is minimized if the officers routinely exercise unquestioned command of the situation. Cf. Michigan v. Summers (1981), 452 U.S. 692,702-703 101 S.Ct. 2587, 2594, 69 L.Ed.2d 340 (footnote omitted).
 {¶ 22} We find all of the facts taken in total lead to the officer's conduct which was reasonable. Although we share the appellant's concern that the informant's information was not specific and that the officer did not observe any suspicious behavior before stopping the group, we do not find it to be a violation of appellee's Fourth Amendment rights in this case given the facts presented.
 {¶ 23} The sole assignment of error is overruled.
 {¶ 24} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
Gwin, P.J., and Farmer, J., concur; Hoffman, J., dissents