{¶ 19} Being unable to agree with the majority, I respectfully dissent. Specifically, although I agree with the underlying law the majority sets forth in determining this appeal, I disagree with the result the majority reaches in applying the law to the facts of this case.
 {¶ 20} According to the officers' testimony in the trial court, the officers were informed through the dispatcher that the UDF clerk overheard a man, O'Connor, using the telephone. In his telephone conversation, O'Connor told someone to pick him up and to bring a gun. The parties do not dispute that requesting a ride and a gun, or transporting a gun in a motor vehicle, is not illegal in Ohio.
 {¶ 21} I nonetheless recognize reasonable suspicion may be based on activity that is not illegal. In such instances, however, the totality of the circumstances must still demonstrate a reasonable suspicion that the person is engaged in criminal conduct. Here, the evidence reveals no other circumstances, known to the police officers or the dispatcher at the time of the stop, which would give rise to reasonable suspicion.
 {¶ 22} When the officers observed O'Connor leave the store, they saw no illegal activity; nor did they detect anything as they approached the vehicle that O'Connor entered. They conducted no further surveillance, saw no fights or contraband, and observed no evasive movements. See, e.g., State v. Smith,
Franklin App. No. 04AP-859, 2005-Ohio-2560, at ¶ 37 (noting officer obtained reasonable suspicion of criminal activity through suspect's attempt to walk away from the officer). Neither did the officers testify to nearby groups of people who could be endangered by an armed O'Connor. See In re Long, Stark App. No. 2004-CA-00377, 2005-Ohio-3825, at ¶ 19-22 (concluding that, although the officer receiving a tip did not personally see any unusual activity, reasonable suspicion arose due to the particular circumstances, including the large group of friends near the armed suspect, and the suspect's proximity to a school festival, children, and families). Given the dearth of evidence to support reasonable suspicion, the majority relies, in part, on the time of day, the officers' experience, and the high crime neighborhood. While those are factors the court may consider, they alone are insufficient to give rise to reasonable suspicion. Otherwise, the misfortune of living in a high crime area would subject one to an arbitrary stop in the night hours.
 {¶ 23} Understandably attempting to avoid such a conclusion, the majority mentions the bar across the street from the UDF, noting the history of problems with the bar. Nothing in the evidence, however, suggests the officers had any basis to connect O'Connor with the bar at the time of the stop. While they learned of information subsequent to the stop that supplied that connection, the information the officers learned after the stop cannot be used to justify the stop. Similarly irrelevant is the officers' learning, after they removed O'Connor from the vehicle, that he had been in a fight at the bar and had scraped knuckles and muddy clothes as a result. See Ornelas v. United States
(1996), 517 U.S. 690, 696, 116 S.Ct. 1657.
 {¶ 24} The majority also mentions the testimony that O'Connor appeared frantic at the time he placed the call resulting in defendant's arrest. Of the three officers who testified, only one mentioned that the dispatch contained such information. The trial court, as the trier of fact, listened to the testimony and determined the evidence it found persuasive. We cannot on appeal construe the facts in a way that undermines the trial court's decision when the facts may be interpreted to support it. As the majority opinion states, "because the [trial] court is in the best position to resolve questions of fact and evaluate the credibility of witnesses, a reviewing court `must accept the trial court's factual findings and the trial court's assessment of witness credibility.'" Id. at ¶ 4, citing State v.Lattimore, Franklin App. No. 03AP-467, 2003-Ohio-6829, at ¶ 5.
 {¶ 25} The trial court's decision granting the motion to suppress states that, "[a]ccording to the dispatch, the clerk had witnessed a white male place a telephone call during which he requested a ride and a gun. The only other information providedin the dispatch was that the individual had short brown hair and was wearing a white shirt and jeans." (Emphasis added.) (Sept. 19, 2005 Decision and Entry, at 2.) Because the trial court apparently did not accept the officer's testimony that the dispatch indicated O'Connor was frantic, we may not rely on the factor to support a finding of reasonable suspicion.
 {¶ 26} In the final analysis, the record fails to contain any notable factors beyond the time of day, the high crime area and the officers' experience, which alone are insufficient to give rise to a reasonable suspicion of illegal activity. As a result, the trial court properly granted the motion to suppress. Because the majority concludes otherwise, I dissent.