[Cite as *State v. Davidson*, 2019-Ohio-5320.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 18AP-643 |
| v. | : | (C.P.C. No. 16CR-7033) |
| Travis C. Davidson, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 24, 2019

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee. **Argued**: *Barbara A. Farnbacher*.

**On brief**: *Yeura R. Venters*, Public Defender, and *Ian J. Jones*, for appellant. **Argued**: *Ian J. Jones*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Travis C. Davidson, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas finding him guilty, upon entry of a no contest plea, of carrying a concealed weapon and having a weapon under disability, following the trial court's earlier denial of appellant's motion to suppress.

{¶ 2} On December 20, 2016, appellant was indicted on one count of carrying a concealed weapon, in violation of R.C. 2923.12, and one count of having a weapon while under disability, in violation of R.C. 2923.13. Count 2 of the indictment (having a weapon while under disability) alleged appellant was under indictment for a felony offense of violence, i.e., attempted aggravated arson. On January 24, 2018, appellant entered a plea of not guilty.

{¶ 3}  On March 16, 2018, appellant filed a motion to suppress.  Plaintiff-appellee, State of Ohio, subsequently opposed the motion by memorandum contra.  On April 25, 2018, the trial court conducted a hearing on the motion to suppress.

{¶ 4}  The sole witness at the suppression hearing was Columbus Police Officer David Moreau.  On October 7, 2016, Officer Moreau was on third-shift patrol with another officer in the 12th precinct.  At 12:06 a.m., the officers were dispatched to the area of Kelton and Livingston Avenues.  The dispatch indicated a "known caller" had reported "two male blacks with black hoodies seen waving * * * firearms in the rear of the library."  (Apr. 25, 2018 Tr. at 8.)  The officers had just left the substation on Main Street, approximately two miles from the library, and were in a marked vehicle traveling "southbound on Miller Avenue towards the library."  (Apr. 25, 2018 Tr. at 8.)  They then turned and drove through "the alley just north of Livingston [Avenue]."  (Apr. 25, 2018 Tr. at 8.)

{¶ 5}  Officer Moreau observed appellant walking northbound on Kelton Avenue, coming from the area of Livingston Avenue.  Appellant "was on the sidewalk on the left side of the street."  (Apr. 25, 2018 Tr. at 10.)  As the officers "continued eastbound in the alley, [appellant] crossed to the east side of Kelton Ave[nue] * * * where [they] approached and stopped him."  (Apr. 25, 2018 Tr. at 10.)  Officer Moreau testified appellant matched the "description we were given" regarding "two male blacks wearing black hoodies in the area immediately behind the library, which is where we first saw the Defendant."  (Apr. 25, 2018 Tr. at 12.)  There was no one else in the area at the time.

{¶ 6}  Appellant had a backpack.  The officers "began talking to him, asking if he saw anyone outside * * * waving handguns around or weapons."  (Apr. 25, 2018 Tr. at 11.)  Appellant stated "he did not."  (Apr. 25, 2018 Tr. at 11.)  Appellant became "nervous" and "started stuttering, kept just repeating over and over, I am just going home, I didn't do anything." (Apr. 25, 2018 Tr. at 11.)

{¶ 7}  The officers requested appellant put the backpack down.  Officer Moreau then testified: "At that time he dropped the backpack next to him, [I] heard a noticeably * * * loud metallic bang.  I bent over to move the backpack away from him for safety reasons.  At that time when I grabbed the backpack from the side pocket, I could feel what I immediately know to be a handgun."  (Apr. 25, 2018 Tr. at 11.)  Officer Moreau advised his partner "there was a handgun in the backpack."  (Apr. 25, 2018 Tr. at 14.)  The other officer arrested appellant, and Officer Moreau "opened the backpack and retrieved the firearm from it."

(Apr. 25, 2018 Tr. at 14.)   The firearm, a 9 mm handgun, was loaded with "six live rounds of ammunition."  (Apr. 25, 2018 Tr. at 15.)

{¶ 8}  Following the presentation of evidence, the trial court denied the motion to suppress.   On June 5, 2018, appellant entered a no contest plea to both counts of the indictment.   The trial court ordered a presentence investigation, and the matter came for sentencing before the trial court on July 24, 2018.  By judgment entry filed July 25, 2018, the trial court sentenced appellant to 18 months incarceration as to Count 1, and 3 years incarceration as to Count 2, with the counts to be served concurrently to each other.

{¶ 9}  On appeal, appellant sets forth the following two assignments of error for this court's review:

> First Assignment of Error: The trial court erred by admitting the firearm into evidence, as officers had no reasonable suspicion that criminal activity was afoot before conducting a search and seizure of appellant's person and backpack, and the single witness in appellant's suppression hearing did not articulate what, if any, criminal activity he reasonably suspected was afoot at the time of the search and seizure.
>
> Second Assignment of Error: The trial court erred in failing to take into consideration mandatory sentencing factors set forth in R.C. 2929.11 and R.C. 2929.22.   Because appellant was sentenced to the maximum term allowed for each offense, this is an appeal as of right pursuant to R.C. 2953.08.

{¶ 10}  Under the first assignment of error, appellant challenges the trial court's decision denying his motion to suppress.   Appellant contends the police officers had no reasonable suspicion that criminal activity was afoot before conducting a search and seizure of his person and backpack.

{¶ 11}  An appellate court's review of a motion to suppress "presents a mixed question of law and fact."  *State v. Dukes,* 4th Dist. No. 16CA3745, 2017-Ohio-7204, ¶ 13.  During a suppression hearing, "the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility."  *Id.*  Accordingly, "when reviewing a ruling on a motion to suppress, we defer to the trial court's findings of fact if they are supported by competent, credible evidence."  *Id.*  Accepting, however, such facts as true, " 'we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case.' "  *Id.*, quoting *State v. Gurley,* 4th Dist. No. 14CA3646, 2015-Ohio-5361, ¶ 16.

{¶ 12} Ohio courts have recognized "three methods of challenging on appeal a trial court's ruling on a motion to suppress." *State v. Williams,* 5th Dist. No. 2004CA00354, 2005-Ohio-3345, ¶ 19. First, an appellant may seek to challenge the trial court's "findings of fact," requiring an appellate court to "determine whether said findings of fact are against the manifest weight of the evidence." *Id.* Second, an appellant may argue the court "failed to apply the appropriate test or correct law to the findings of fact," in which case an appellate court "can reverse the trial court for committing an error of law." *Id.* Finally, in cases where "the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress." *Id.* In reviewing "this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case." *Id.*

{¶ 13} The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." *State v. Hairston,* 156 Ohio St.3d 363, 2019-Ohio-1622, ¶ 9. Such protections "extend to brief investigative stops that fall short of traditional arrests." *Id.* A law enforcement officer "may perform such a stop when the officer has a reasonable suspicion based on specific and articulable facts that criminal behavior has occurred or is imminent." *Id.*, citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Further, "when the officer is 'justified in believing' that an individual may be 'armed and presently dangerous,' the officer may conduct a limited protective search of the individual for concealed weapons." *Id.,* citing *Terry* at 24.

{¶ 14} The "reasonable-suspicion standard" under *Terry* "is less demanding than the probable-cause standard used when analyzing an arrest." *Id.* at ¶ 10, citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Further, "[t]he determination whether an officer had reasonable suspicion to conduct a *Terry* stop must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *Id.,* citing *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). A reviewing court's "assessment of the totality of the circumstances 'does not deal with hard certainties, but with probabilities.' " *Id.,* citing *United States v. Cortez*, 449 U.S. 411, 418 (1981). In performing this review, "[w]e consider the cumulative facts 'not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' " *Id.*

{¶ 15} As set forth under the facts, the state presented evidence that police officers responded to the area of Kelton and Livingston Avenues based on information relayed by dispatch from a "known caller" reporting two individuals waving weapons in the back of a library. Courts have, in general, "identified three classes of informants: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant." *Maumee v. Weisner,* 87 Ohio St.3d 295, 300 (1999). Ohio and federal courts have "accorded the identified citizen witness higher credibility." *Id. See also State v. Borum,* 9th Dist. No. 27167, 2014-Ohio-5639, ¶ 8 ("Unlike anonymous informants, citizen informants, who face the prospect of criminal liability for fabricating a report, are accorded a presumption of reliability.").

{¶ 16} Under Ohio law, "[a] telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability." *Weisner* at paragraph two of the syllabus. *See also State v. Yu,* 11th Dist. No. 2014-G-3209, 2015-Ohio-637, ¶ 28 (informants' tips from citizens who based their knowledge of facts on their own observations of events as they were occurring "merited a high degree of credibility sufficient to withstand a Fourth Amendment challenge without independent police corroboration"); *State v. Dellagnese,* 9th Dist. No. 27492, 2015-Ohio-4349, ¶ 9 (because 911 caller "was an identified citizen informant, we may ascribe a high degree of reliability to the information that he provided, and it need not be supported by independent observations" by police officer). Further, "with respect to the substance of the tip, an eyewitness account of criminal activity is due greater reliability than a secondhand description," and "[t]he immediacy of the report lends further credibility to the tip, as the informant's account is not completely dependent on memory." *Borum* at ¶ 8, citing *Weisner* at 302. *See also In re Long,* 5th Dist. No. 2004-CA-00377, 2005-Ohio-3825, ¶ 10 ("Typically, a personal observation by an informant is due greater reliability than a second-hand description.").

{¶ 17} The state argues the facts of this case are similar to those in another case decided by this court, *State v. Vance,* 10th Dist. No. 92AP-1388 (Mar. 18, 1993). In *Vance,* police officers responded to a dispatch indicating that an individual was observed carrying a firearm in his waistband. The officers arrived at the location "three to eight minutes after hearing the dispatch," and "[a]n individual matching the detailed description was almost immediately observed in the area." *Id.* The suspect "did not have a firearm in his visible possession." *Id.* The officers performed a *Terry* stop and discovered a firearm in the

defendant's waistband.  The defendant subsequently sought to suppress the firearm, which the trial court denied.  On appeal, this court affirmed the judgment of the trial court, holding in part that "finding an individual in the location alleged, at the time alleged, and wearing clothing described in detail was sufficient corroboration to provide the police with a reasonable, articulable suspicion that the balance of the tip (namely that the individual was armed) was true." *Id.*

{¶ 18} We agree with the state's argument that the tip in the instant case had the same (if not greater) indicia of reliability as the tip in *Vance.*  We note that in *Vance,* the appellant asserted the tip was provided by an anonymous source.  In the present case, the officers received a dispatch based on information obtained from an identified citizen, i.e., the informant provided identifying information, including a name and telephone number.  (State's Ex. A.)  The informant gave a description of two black males in hoodies, and stated these individuals were waving a firearm in the back of the library.  The dispatch was aired shortly after midnight (12:06 a.m.), and the officers arrived in the area within minutes of the dispatch.  Given the time frame between the call and arrest, a reasonable inference is that the tip was based on firsthand information, i.e., the informant personally observed and reported a public safety risk.  Officer Moreau testified appellant matched the description provided of two black males "wearing black hoodies in the area immediately behind the library, which is where we first saw [appellant]."  (Apr. 25, 2018 Tr. at 12.)  The officer stated there was no one else in the area at the time.  When officers approached appellant and asked if he saw anyone waving weapons in the area, he became "nervous" and "started stuttering."  (Apr. 25, 2018 Tr. at 11.)

{¶ 19} On review, we conclude, as in *Vance,* that "finding an individual in the location alleged, at the time alleged, and wearing clothing described in detail was sufficient corroboration to provide the police with a reasonable, articulable suspicion that the balance of the tip (namely that the individual was armed) was true." *Vance.  See also Borum* at ¶ 10 (given nature of tip by citizen informant, who reported that a man flashed a gun at neighbor, the "identifying information about the informant, and the immediacy with which the alleged incident was reported," officer was justified in initiating an investigatory stop).  Based on the totality of the circumstances, including the reliability of the information, we conclude there were specific facts giving rise to a reasonable suspicion justifying an investigative stop of appellant.

{¶ 20} In challenging the trial court's ruling on the motion to suppress, appellant relies primarily on this court's recent decision in *State v. Thomas,* 10th Dist. No. 16AP-852, 2018-Ohio-758.[1]   Specifically, appellant cites language in *Thomas* in which this court indicated agreement with a trial court's statement that " 'under Ohio law, possession of ammunition and/or a firearm, in and of itself, is not evidence of criminal activity. * * * Ohio citizens have the right to arm themselves.' "  *Id.* at ¶ 21.  We do not find the above language in *Thomas* dispositive of this case.  While the passage cited in *Thomas* recognizes the fact there are lawful means of possessing a weapon, the United States Supreme Court has "consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.' " *Navarette v. California*, 572 U.S. 393, 403 (2014), quoting *United States v. Arvizu,* 534 U.S. 266, 277 (2002).   Rather, the issue remains, under the "totality of the circumstances," whether the "indicia of reliability" of the information provided the officers with reasonable suspicion to justify a *Terry* stop.  *Id.* at 404.[2]  As set forth above, there were facts presented upon which the trial court could conclude the investigative stop was appropriate.

{¶ 21} In instances where a lawful investigatory stop has been made, police officers "may conduct a limited protective search for concealed weapons if the officer reasonably believes that the suspect may be armed or a danger to the officer or to others."  *State v. Todd,* 2d Dist. No. 23921, 2011-Ohio-1740, ¶ 29.   We have previously noted the information provided by an informed citizen (including a description of two individuals waving weapons in the rear of a library) contained sufficient indicia of reliability.   Upon arriving at the location, the officers were able to corroborate information provided by the informant (i.e., appellant matched the description and was observed in the immediate location), and Officer Moreau testified as to his personal observations, including appellant's nervous behavior in the early morning hours.   On review, and considering the totality of the circumstances, we agree with the state the factors supporting the officers' stop of appellant also supported the limited protective frisk for weapons.

---

[1] We note the decision relied on by appellant is currently on appeal before the Supreme Court of Ohio.  *See State v. Thomas,* 153 Ohio St.3d 1484, 2018-Ohio-3867, appeal accepted for review.

[2] We also find the facts in *State v. Thomas,* 10th Dist. No. 16AP-852, 2018-Ohio-758, to be distinguishable from those of the instant case.  In *Thomas,* police officers stopped an individual walking down the street after the officers observed a firearm magazine attached to his belt, and the officers also observed the outline of a firearm. By contrast, in the instant case, an informed citizen reported that two individuals were not merely carrying a weapon but, rather, "waving" around a firearm behind a library shortly after midnight.

{¶ 22} Based on the record presented, we find the trial court did not err in denying the motion to suppress.

{¶ 23} Accordingly, the first assignment of error is not well-taken and is overruled.

{¶ 24} Under the second assignment of error, appellant argues the trial court erred in failing to take into consideration the mandatory sentencing factors in R.C. 2929.11 and 2929.12. According to appellant, these considerations were required to be made on the record at the time of sentencing. Appellant maintains, however, the trial court failed to provide any reasons during the sentencing hearing which would support the imposition of maximum sentences.

{¶ 25} A reviewing court "will not reverse a trial court's sentencing decision unless the evidence is clear and convincing that either the record does not support the sentence or that the sentence is contrary to law." *State v. Maxwell,* 10th Dist. No. 18AP-341, 2019-Ohio-2191, ¶ 6, citing *State v. Chandler,* 10th Dist. No. 04AP-895, 2005-Ohio-1961, ¶ 10. Under Ohio law, "a sentence is not clearly and convincingly contrary to law when a trial court considers the principles and purposes of sentencing contained in R.C. 2929.11 and the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Haddad*, 10th Dist. No. 16AP-459, 2017-Ohio-1290, ¶ 19.

{¶ 26} In accordance with Ohio's sentencing laws, "a sentencing court is required to consider the principles and purposes of felony sentencing as set forth in R.C. 2929.11, and the seriousness and recidivism factors provided in R.C. 2929.12 when sentencing a criminal defendant." *State v. Ayers,* 10th Dist. No. 13AP-371, 2014-Ohio-276, ¶ 9. With respect to R.C. 2929.12, that statute " 'identifies a nonexclusive list of factors relating to the seriousness of the offense and recidivism of the offender for the court to consider in imposing a sentence to meet those objectives.' " *Id.,* quoting *State v. Samuels*, 8th Dist. No. 88610, 2007-Ohio-3904, ¶ 14.

{¶ 27} While there is a "mandatory duty to 'consider' the relevant statutory factors under R.C. 2929.11 and 2929.12, the trial court is not required to go through each factor on the record or to make specific findings, explaining its analysis of the relevant factors prior to imposing a sentence." *State v. Caffey,* 8th Dist. No. 101833, 2015-Ohio-1311, ¶ 15. *See also State v. Magallanes*, 3d Dist. No. 12-14-02, 2014-Ohio-4878, ¶ 21 ("Although it is required to consider R.C. 2929.11 and 2929.12, the trial court is not required to use specific language

regarding its consideration of those statutes."); *State v. Holloman,* 10th Dist. No. 07AP-875, 2008-Ohio-2650, ¶ 18 ("It is well-settled that these two sections [R.C. 2929.11 and 2929.12] do not mandate judicial fact-finding.").

{¶ 28} In the present case, appellant does not contend the sentence imposed was outside the statutory range and, therefore, such sentence is "not contrary to law." *State v. Stubbs,* 10th Dist. No. 13AP-810, 2014-Ohio-3696, ¶ 16. Further, the trial court's entry states in part that the court "has considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the fact[ors] set forth in R.C. 2929.12." (July 25, 2018 Jgmt. Entry.) This court has held that the above language in a judgment entry "belies a defendant's claim that the trial court failed to consider the purposes and principles in sentencing, pursuant to R.C. 2929.11(A), and the R.C. 2929.12 factors regarding recidivism and the seriousness of the offense." *Id.* at ¶ 14, citing *State v. Foster*, 10th Dist. No. 12AP-69, 2012-Ohio-4129, ¶ 15; *State v. Small*, 10th Dist. No. 09AP-1175, 2010-Ohio-5324, ¶ 16.

{¶ 29} The record indicates the trial court ordered a pre-sentence investigation report prior to sentencing, and the court's judgment entry noted it "ordered and received the pre-sentence investigation." The record further reflects that appellant, at the time he was charged in the instant action, was under indictment for aggravated arson, "a felony offense of violence." (June 5, 2018 Tr. at 7.) As also noted above, the sentencing entry indicates the trial court considered the principles and purposes of sentencing, pursuant to R.C. 2929.11, and the factors under 2929.12. On review, we do not find the trial court erred in imposing the sentence under R.C. 2929.11 and 2929.12.

{¶ 30} Appellant's second assignment of error is not well-taken and is overruled.

{¶ 31} Based on the foregoing, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and McGRATH, JJ., concur.

McGrath, J., retired, formerly of the Tenth Appellate District,
Assigned to active duty under authority of the Ohio Constitution,
Article IV, Section 6(C).

_____