[Cite as *State v. Ndiaye*, 2025-Ohio-1069.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 24AP-306<br>(C.P.C. No. 23CR-4164) |
| Ronnico M. Ndiaye, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 27, 2025

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Michael A. Walsh*, for appellee.

**On brief:** *Wolfe & Mote Law Group, LLC*, and *Stephen T. Wolfe*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Defendant-appellant, Ronnico M. Ndiaye, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas on his plea of no contest to carrying a concealed weapon, unlawful possession of dangerous ordnance, and obstructing official business, following the trial court's denial of his motion to suppress.

## I. Facts and Procedural History

{¶ 2} On August 18, 2023, appellant was indicted on one count of carrying a concealed weapon, in violation of R.C. 2923.12, one count of unlawful possession of dangerous ordnance, in violation of R.C. 2923.17, and one count of obstructing official business, in violation of R.C. 2921.31. Counts 2 and 3 each carried firearm specifications.

{¶ 3} On December 28, 2023, appellant filed a motion to suppress, asserting in part that police officers lacked reasonable suspicion to initiate a stop and that the evidence discovered during the search of his person (i.e., a firearm) should have been suppressed. On January 22, 2024, plaintiff-appellee, State of Ohio, filed a memorandum contra appellant's motion to suppress.

{¶ 4} On January 30, 2024, the trial court held a hearing on the motion to suppress. Columbus Police Officer Christopher Davis testified on behalf of the state. On August 9, 2023, Officer Davis was on duty "in routine patrol around the area of Parsons [Avenue] and Morrill [Avenue]," accompanied by Columbus Police Officer Seth Smith. (Jan. 30, 2024 Tr. at 6.)

{¶ 5} Officer Davis testified as to an "influx of shootings and violent crime and illegal guns and narcotics in the area." (Jan. 30, 2024 Tr. at 6.) He noted that, during 2023, "one of [the] highest intersections for shootings in the City of Columbus" was at Morrill Avenue and Parsons Avenue. (Jan. 30, 2024 Tr. at 12.) Officer Davis had been part of a "special task force" working "multiple drug houses" and dealing with "Glock switches in the area," and he had responded to "four previous shootings" involving individuals "between the age of 14 and 23 wearing black ski masks." (Jan. 30, 2024 Tr. at 12.)

{¶ 6} During the daytime hours of August 9, 2023, Officer Davis "observed a pedestrian violation [of] 2171.05(a) Columbus City Code." (Jan. 30, 2024 Tr. at 7.) The officer described the surrounding area as having "sidewalks on the north and the south of Morrill Avenue, east of Parsons Avenue, at which point there's an alley on the east . . . Lyle Alley, Parsons Avenue on the west," and "a market on [the] northwest corner." (Jan. 30, 2024 Tr. at 7.) Officer Davis "observed two individuals standing in the middle of the eastbound lanes on Morrill Avenue while a vehicle . . . was attempting to travel eastbound." (Jan. 30, 2024 Tr. at 7.) Officer Davis stated the vehicle was "imped[ed] [in] its attempt to do so due to the pedestrian violation." (Jan. 30, 2024 Tr. at 7-8.)

{¶ 7} Officer Davis identified appellant as one of the individuals impeding traffic. Officer Davis testified appellant "was standing about three steps north of the sidewalk in the middle of the road." (Jan. 30, 2024 Tr. at 9-10.) According to the officer, the act of "loitering in the middle of the roadway" constitutes a violation of the city jaywalking ordinance. (Jan. 30, 2024 Tr. at 10.) Appellant "was wearing a full ski mask covering his

face," and he was "also clutching the right side of his waistband." (Jan. 30, 2024 Tr. at 11.) Appellant was "with another individual" who was "younger and smaller who did not wear a ski mask." (Jan. 30, 2024 Tr. at 11.)

{¶ 8} Officer Davis testified that, "when we observed them committing the infraction in the middle of the road, I then stopped, told the other car, them to back off, let the car go. At which point [appellant] crossed and cut in front of the car to go towards the market as I was waiving [sic] on the vehicle [that] had the right-of-way." (Jan. 30, 2024 Tr. at 11.) The officers exited their vehicle, and Officer Davis "went to stop [appellant] who continued to walk away. I asked for his ID, asked him to come there. At which time a foot chase ensued and which time we conducted an arrest." (Jan. 30, 2024 Tr. at 7.)

{¶ 9} During the hearing, the state played a video of the officer's "body-worn camera," and Officer Davis described the events while the video was played. (Jan. 30, 2024 Tr. at 13.) Officer Davis testified that Officer Smith is depicted "getting out of the car, telling [appellant] to come here, to let him know that he's being stopped." (Jan. 30, 2024 Tr. at 15.) At that point, appellant "continues to walk at a fast pace north and west," and it "appears that he's about to flee." (Jan. 30, 2024 Tr. at 15.)

{¶ 10} Officer Davis "continue[s] to walk westbound while asking for [appellant's] ID." (Jan. 30, 2024 Tr. at 15.) Officer Davis testified appellant "was being stopped for pedestrian in the roadway," but "[w]e didn't have the ability to finish that . . . pedestrian traffic stop due to the fact that he does flee." (Jan. 30, 2024 Tr. at 16-17.) Appellant was eventually detained and a firearm was "removed off of his person." (Jan. 30, 2024 Tr. at 17.) The officers were "wrestling for it for a little while[,]" and appellant "was reaching down towards it when we finally told one of the officers to go grab it . . . while we went ahead and affected the arrest." (Jan. 30, 2024 Tr. at 18.) The weapon contained a switch "that makes it semiautomatic to fully automatic." (Jan. 30, 2024 Tr. at 17.)

{¶ 11} On cross-examination, defense counsel questioned the officer whether appellant misinterpreted the officer's act of waving the vehicle on as "waving [appellant] across the street." (Jan. 30, 2024 Tr. at 35.) Officer Davis responded: "I can't answer that." (Jan. 30, 2024 Tr. at 35.) The officer stated appellant "was standing in the middle of the road loitering and at that point, the car that came off Parsons Avenue that had a legal right to go eastbound was unable to do it." (Jan. 30, 2024 Tr. at 38.) On re-direct, Officer Davis

stated that when he waved at the driver of the vehicle to continue through, the "other individual" who was with appellant "backed up to the sidewalk, took several steps back and then stood there." (Jan. 30, 2024 Tr. at 48.)

{¶ 12} By entry filed on February 13, 2024, the trial court denied the motion to suppress. In its decision, the court found "the officers had reasonable suspicion to stop [appellant] to issue him a citation for jay walking under the Columbus City Code based upon their observations of [appellant] being in the street and traffic having to stop to get around him," and that "[o]nce the [appellant] attempted to flee from the officers, they had more than enough to engage in a Terry stop." (Feb. 13, 2024 Entry at 5.)

{¶ 13} On April 29, 2024, appellant withdrew his previously entered plea of not guilty and entered a plea of no contest to the three charges in the indictment. At the plea hearing, the state gave the following recitation of facts as to the events on August 9, 2023:

> Officers were driving eastbound on Morrill Avenue approaching Parsons Avenue when they observed the defendant and his friend begin to jaywalk. The defendant impeded the movement of another vehicle that had turned off of Parsons Avenue onto Morrill Avenue. Officers attempted to order the defendant to stop so they could issue a jaywalking citation. The defendant was clutching his waistband at that time. When he was asked to stop, he tried to run from the police officers. There was an additional cruiser actually right behind them fortunately and they were able to tackle the defendant and stop him from fleeing.
>
> During a scuffle on the ground a firearm was observed in his waistband. After being taken into custody that firearm was recovered. It was a Glock 45 9mm pistol loaded with one round in the chamber and 30 rounds in an extended magazine. That firearm also had on the back of it a Glock switch.
>
> The defendant made statements to the police spontaneously saying they ain't going to let me out since I had another gun on me and also confirmed that he had just been released from Jackson Pike for a gun offense in reference to the prior case that we are pleading out today as well.

(Apr. 29, 2024 Tr. at 17-18.)

{¶ 14} The trial court, based on the state's representation of the evidence, made a finding of guilt as to each count of the indictment. By entry filed on May 7, 2024, the trial court entered judgment and sentence accordingly.

## II. Assignment of Error

{¶ 15} Appellant appeals and assigns the following single assignment of error for our review:

> The trial court erred when it denied Appellant's Motion to Suppress.

## III. Analysis

{¶ 16} Under his single assignment of error, appellant challenges the trial court's denial of his motion to suppress. Appellant asserts the trial court "misstated the facts as presented, applied the wrong test to the correct facts, and ultimately reached the wrong conclusion when it found reasonable suspicion for the stop and search." (Appellant's Brief at 6.)

{¶ 17} Under Ohio law, "[a]ppellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. In "considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). Further, "[a]ccepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997).

{¶ 18} Ohio courts have recognized there are " 'three methods of challenging on appeal a trial court's ruling on a motion to suppress.' " *State v. Davidson*, 2019-Ohio-5320, ¶ 12 (10th Dist.), quoting *State v. Williams*, 2005-Ohio-3345, ¶ 19 (5th Dist.). First, the appellant "may seek to challenge the trial court's 'findings of fact,' requiring an appellate court to 'determine whether said findings of fact are against the manifest weight of the evidence.' " *Davidson* at ¶ 12, quoting *Williams* at ¶ 19. Second, the appellant "may argue the court 'failed to apply the appropriate test or correct law to the findings of fact,' in which

case an appellate court 'can reverse the trial court for committing an error of law.' " *Davidson* at ¶ 12, quoting *Williams* at ¶ 19. Finally, as to "cases where 'the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress.' " *Davidson* at ¶ 12, quoting *Williams* at ¶ 19.

{¶ 19} Both the Fourteenth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution, safeguard individuals "from unreasonable searches and seizures." *State v. Fleming*, 2020-Ohio-5352, ¶ 14 (2d Dist.), citing *State v. Leak*, 2016-Ohio-154, ¶ 13. In this respect, "[w]arrantless searches are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." *State v. West*, 2006-Ohio-4267, ¶ 13 (8th Dist.), citing *State v. Welch*, 18 Ohio St.3d 88, 91 (1985), citing *Katz v. United States*, 389 U.S. 347, 357 (1967).

{¶ 20} One of the "well recognized exceptions" to the warrant requirement under the Fourth Amendment is "[t]he investigative stop sanctioned in *Terry* [*v. Ohio*, 392 U.S. 1 (1968)]." *State v. Nixon*, 2002-Ohio-2702, ¶ 20 (2d Dist.). Regarding "investigatory detentions, police officers may briefly stop and/or temporarily detain individuals to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation." *Ohio v. Allen*, 2021-Ohio-3047, ¶ 32 (2d Dist.), citing *Terry*; *State v. Mays*, 2008-Ohio-4539, ¶ 7-8. Such "[r]easonable suspicion must be based on specific and articulable facts, which when taken together with rational inferences from those facts, reasonably warrant the intrusion." *State v. Barton*, 2007-Ohio-2348, ¶ 9 (2d Dist.), citing *State v. Taylor*, 2005-Ohio-804 (2d Dist.). Further, "[w]hether an officer had reasonable suspicion to conduct a *Terry* stop is determined based on the totality of the circumstances, ' "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." ' " *In re A.M.J.*, 2024-Ohio-5889, ¶ 12 (10th Dist.), quoting *State v. Hairston*, 2019-Ohio-1622, ¶ 10, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991).

{¶ 21} As set forth under the facts of this case, Officer Davis testified he attempted to stop appellant for a violation of Columbus City Code ("C.C.C.") 2171.05(a). That code provision states as follows: "Where a sidewalk is provided and its use is practicable, it shall

be unlawful for any pedestrian to walk along and upon an adjacent roadway." C.C.C. 2171.05(a).

**{¶ 22}** Under Ohio law, "a police officer's observation of a traffic violation generally justifies an investigatory stop." *State v. Santos*, 1999 Ohio App. LEXIS 5586, *7 (3d Dist. Nov. 29, 1999), citing *State v. Johnson*, 105 Ohio App.3d 37, 40 (12th Dist. 1995). *See also State v. Lenzy*, 2018-Ohio-3485, ¶ 15 (5th Dist.) ("Reasonable suspicion to stop an individual has been found to exist in cases involving misdemeanor traffic offenses, including where pedestrians are illegally walking on a roadway."). This court has similarly held that "an officer who observes the commission of a minor misdemeanor has reasonable suspicion to believe a criminal offense has occurred and may stop and briefly detain the offender." *State v. Limoli*, 2012-Ohio-4502, ¶ 30 (10th Dist.) (officer's observation of appellant "walking down the middle" of alley "alone justified appellant's initial detention").

**{¶ 23}** This court has previously addressed the propriety of a *Terry* stop in the context of an officer's observation of a violation of C.C.C. 2171.05(a). *See State v. Dillon*, 2005-Ohio-4124, ¶ 28 (10th Dist.) ("officers had reasonable suspicion to stop appellant for jaywalking" in violation of C.C.C. 2171.05(a)); *State v. Moorer*, 2014-Ohio-4776, ¶ 21 (10th Dist.) (where officer observed appellant walking in middle of street in area where use of sidewalks was practicable, "such evidence supports a reasonable suspicion on the part of [the officer] that appellant committed a misdemeanor traffic offense").

**{¶ 24}** Appellant asserts in the present case that it was Officer Davis's "own actions that caused the alleged jaywalking," arguing that the officer "ambiguously waved and said, 'go ahead,' causing [a]ppellant to logically assume that he was being told to cross the street." (Appellant's Brief at 10.) Appellant further contends Officer Davis "testified that when he was approaching, [a]ppellant and the other individual were in the parking lot," and it was "only after he got closer that he said they were in the street, impeding traffic." (Appellant's Brief at 11.) According to appellant, the evidence does not indicate he committed a jaywalking offense. Finally, appellant contends the trial court incorrectly found this to be a consensual encounter.

**{¶ 25}** In its response, the state argues the record contradicts appellant's assertion that Officer Davis testified as to observing appellant and the other individual "in the parking lot" as the officers approached. We agree, as the hearing transcript reflects the officer's

testimony was that, upon approaching Lyle Alley, "I observed two individuals standing in the middle of the eastbound lanes on Morrill Avenue while a vehicle . . . was attempting to travel eastbound." (Jan. 30, 2024 Tr. at 7.) Here, the trial court's factual finding that Officer Davis "testified he was on East Morrill Avenue heading west towards Parsons Avenue near L[y]le [A]lley when he saw the Defendant and one other person in the street blocking traffic" is supported by competent, credible evidence. (Feb. 13, 2024 Entry at 2.)

{¶ 26} As indicated, appellant also contends the officer's unclear gesture induced him to cross the street, and that he therefore did not commit a jaywalking offense by walking in front of the vehicle to cross the street. However, and as noted by the state, Officer Davis testified his intent to cite appellant for a violation of C.C.C. 2171.05(a) was based on his initial observation of appellant standing in the middle of the street impeding traffic (i.e., as opposed to appellant's subsequent conduct in crossing the street (outside a crosswalk) based on a purported misunderstanding as to the officer's gesture).

{¶ 27} Appellant's contention that the trial court found this to be a consensual encounter is not persuasive. While the trial court's decision cited case law involving consensual encounters in addressing the issue of appellant's attempted flight from the scene, the court specifically found "the officers had reasonable suspicion to stop [appellant] to issue him a citation for jay walking under the Columbus City Code based upon their observations of [appellant] being in the street and traffic having to stop to get around him." (Feb. 13, 2024 Entry at 5.)

{¶ 28} Upon review, the record supports the trial court's finding the officers observed appellant commit a violation of C.C.C. 2171.05 and that they had the requisite reasonable suspicion to initiate an investigatory stop. *See*, *e.g.*, *Moorer*, 2014-Ohio-4776, at ¶ 21 (10th Dist.) (evidence that officer observed two men walking in middle of street, in violation of C.C.C. 2171.05(a) "supports a reasonable suspicion" on the part of officer that the appellant committed misdemeanor traffic offense, justifying "the initial detention of appellant under *Terry*"); *Dillon*, 2005-Ohio-4124, at ¶ 27-28 (10th Dist.) (violation of C.C.C. 2171.05(a), committed in officers' presence, provided officers "reasonable suspicion to stop appellant for jaywalking").

{¶ 29} As noted by this court in *Moorer*, "a determination that the articulable facts justify the initial detention of appellant under *Terry* does not end the inquiry." *Moorer* at

¶ 21. More specifically, "[i]n order to conduct a pat-down search for weapons, an officer must have reason to believe that an individual is armed and dangerous." *Id.* An officer "does not need to be certain the person has a weapon on them to initiate a pat down." *Lenzy*, 2018-Ohio-3485, at ¶ 18 (5th Dist.), citing *State v. Smith*, 56 Ohio St.2d 405 (1978). Instead, "the standard by which the officer is judged is that of a reasonably prudent man under the circumstances, who would be warranted in the belief his safety was in danger." *Id.*, citing *Smith* at 407. Further, "[w]hile probable cause is not required, the standard to perform a protective search, like the standard for an investigatory stop, is an objective one based on the totality of the circumstances." *Andrews*, 57 Ohio St.3d at 89, citing *Terry*, 392 U.S. at 27. The "rationale" behind a protective search "is to allow the officer to take reasonable precautions for his own safety in order to pursue his investigation without fear of violence." *Andrews* at 89, citing *Terry* at 24, 30.

{¶ 30} Under the facts in *Moorer*, after initially finding the officers had a reasonable suspicion to initiate a stop of the appellant for a violation of C.C.C. 2171.05, this court then considered whether the officers had reason to believe the defendant was armed and dangerous. This court cited evidence in the record that "this *Terry* stop occurred in a high crime area," that the officer was "experienced" and had made "numerous arrests in this area for drug offenses and violent crimes in the past two years," and that "a firearm had been used to commit a homicide in front of the corner store in the week prior to this incident." *Moorer* at ¶ 22. In addition, the officer testified that, in response to his directive to the appellant to stop, the "appellant's hesitation" caused the officer "to believe that appellant might run away." *Id.* This court concluded that "the circumstances" presented provided "an objective justification" for the officer to inquire of appellant whether he had a weapon as "a reasonable safety precaution." *Id.* at ¶ 23.

{¶ 31} In the present case, in addition to reasonable suspicion to stop appellant for a misdemeanor offense, the officers' suspicion was heightened by facts and circumstances giving rise to a reasonable suspicion appellant could be armed and dangerous. The officers initially observed appellant standing in the middle of the street, impeding traffic, and Officer Davis, an experienced officer who had served on a special task force in the area, testified this was a high-crime area where a number of shootings had occurred involving individuals wearing ski masks. At the time, appellant was wearing a ski mask (in the middle

of August) and was observed clutching his waistband. As the officers approached appellant to ask for identification and issue a citation, he fled from the officers and, during the ensuing encounter, Officer Davis testified appellant "was reaching down towards [the weapon]" at the time the officers were able to detain him. (Jan. 30, 2024 Tr. at 18.) Based on the totality of the circumstances, the officers had reasonable suspicion to believe appellant was armed and dangerous to justify conducting a protective pat-down for weapons.

{¶ 32} Because the record supports the trial court's determination the officers did not violate appellant's Fourth Amendment rights, the court did not err in denying the motion to suppress. Accordingly, appellant's single assignment of error is overruled.

## IV. Conclusion

{¶ 33} Based on the foregoing, and having overruled appellant's single assignment of error, the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

BEATTY BLUNT and BOGGS, JJ., concur.

—————————